## JABEZ F. HEWES *versus* DANIEL PARKMAN.

The stock and tools of trade of a partnership were attached at the suit of a creditor, and the officer delivered the same to the creditor, taking his accountable receipt therefor ; and afterwards it was agreed between the creditor and one of the partners, that the creditor should take the property at an appraised value, and appropriate it to the debts of the partnership ; and they gave notice of this arrangement to the officer, and discharged him from his liability on account of the attachment. The other partner having brought an action of trover against the officer for the property attached, the proceedings of his partner and of the attaching creditor were explained to him, and he said he was convinced that the partnership was insolvent, that the property had gone to pay its debts, and that the creditor had made an advantageous disposition of it, but he nevertheless continued to prosecute his action against the officer, saying that as the affair had begun in the law it might end in the law. In the action against the officer the question whether the plaintiff had ratified the doings of his partner and the attaching creditor and the officer, was left to the jury, with the instruction that if they were satisfied from the evidence, that the plaintiff had confirmed and approved of those doings with a full knowledge of all the facts, they should give a verdict for the defendant. It was *held*, that the question of ratification was a proper one to be submitted to a jury, and that it had been submitted with a proper instruction.

It was further *held*, that the ratification by the plaintiff of the agreement of his partner to the sale of the goods at an appraisement, rendered the sale valid, and that his subsequent assent to the attachment of the tools of trade rendered the attachment of them legal, and that the officer, upon notice of the sale, was exempted from further liability to restore the property to the debtors, and that the action against him could not be sustained.

TROVER. The action was tried before *Wilde* J.

It appeared that prior to January 1, 1835, F. & L. Winship had carried on the business of bakers in Boston ; and that, about that time, they sold their tools of trade and custom to Jabez F. Hewes, the plaintiff, and Handel Winship, who then formed a copartnership under the firm of Winship & Hewes, for $600. This property was paid for by two notes, dated January 1, 1835, for $300 each, one of them signed by Handel and Hewes, in their individual names, the other signed by Hewes alone. Hewes contributed nothing to the capital stock of the firm except this note, and Handel contributed $300.

On July 31, 1835, Handel, without the knowledge of his partner, made an assignment to Samuel K. Bayley, dated July 29, of all the debts due to Winship & Hewes, for the benefit of all the creditors of Winship & Hewes who should become parties to the same. On the same day, Handel pre-

pared a notice of the dissolution of the firm (which had been formed for an indefinite period), and caused it to be published in two newspapers. On August 1st Handel surrendered the lease of the bakery, then held by Winship & Hewes, and a new lease was given to F. & L. Winship.

On July 31st, the defendant, as a deputy sheriff, attached the articles described in the declaration, which belonged to Winship & Hewes, on a writ against them in favor of F. & L. Winship. That action was brought upon the note for $300 before mentioned, signed by Handel Winship and Hewes, and upon a note given for $369.95, given by Winship & Hewes, in their copartnership name, for money paid on their account. Handel was defaulted. To the count upon the note for $300, Hewes pleaded infancy ; and to all the counts he pleaded the general issue. After some time, the plaintiffs discontinued against Hewes, and took judgment against Handel, but they never took out execution.

At or about the time of the attachment, Parkman took F. & L. Winship as receipters for all the property attached ; and subsequently, but before the commencement of the present suit, it was agreed between F. & L. Winship, and Handel claiming to act in behalf of the firm of Winship & Hewes, that F. & L. Winship might take all the property attached, at an appraised value, and appropriate it to the payment of the debts of Winship & Hewes. There was evidence tending to show that such an appropriation had been made, and that Parkman received notice of the same, and also a discharge from F. & L. Winship, and from Handel, acting in the name of Winship & Hewes, from all liability on account of the attachment. A large portion of the property attached, including all the tools of trade of Winship & Hewes except a break ball, was the same property which was sold by F. & L. Winship to Winship & Hewes. A demand of the property was made on Parkman by Hewes, but Parkman refused to give up or return the same.

F. & L. Winship having become receipters of the property as above mentioned, carried on the baking business at the place occupied by Winship & Hewes, consuming so much of the property as was perishable, and continued so to carry on

the business until February 1836, when they sold the property which they had on hand, together with the custom and trade.

Lorenzo Winship testified that he had an interview with Hewes in May 1836, which was after the commencement of this action, and after Hewes had come of age; that he then fully explained to Hewes what disposition had been made of the property, and that Hewes said he was satisfied that the firm of Winship & Hewes was insolvent, and that the property had gone to pay the debts of the firm, and that F. & L. Winship had made the best disposition of the property. When asked why he wished to go on in law, and put the witness to expense, he replied, that as the affair had begun in the law, it might end in the law.

The plaintiff's counsel contended, that the attachment of this property of the firm of Winship & Hewes, the same being in part their tools of trade, and the same (with the exception of the break ball) purchased of F. & L. Winship, and paid for by the two notes for $300 each, amounted to a conversion, and would enable the plaintiff to maintain his action against the officer; that the use of the property and a consumption of part of it, by F. & L. Winship, while acting as receipters under the officer, was also a conversion, and would enable the plaintiff to maintain his action; that the sale by F. & L. Winship was a conversion of the property sold by them, for which the officer was responsible, although the sale was made by the consent and at the request of Handel in the name of the firm of Winship & Hewes, and that the defendant had shown no sufficient defence for not accounting with the plaintiff for the property attached, although the defendant had been discharged by Handel, claiming to act in behalf of the firm of Winship & Hewes.

But the judge, intending to reserve all questions of law, instructed the jury that they need consider but one question, namely, whether Hewes had ratified the doings of the defendant, and F. & L. Winship, and Handel Winship; that if they were satisfied from the evidence, that Hewes had confirmed and approved of those proceedings with a full knowledge of all the facts, they should give a verdict for the defendant, but if not so satisfied, they should give a verdict for the plaintiff.

The judge further instructed the jury, that the defence of infancy having been successfully made to one of the notes given in payment for a part of the articles attached, and as the same defence might be successfully made to the other when sued, the original contract of sale from F. & L. Winship was rescinded, and the officer would not in any event be liable to Hewes for any of such property ; and that if they found a verdict for the plaintiff, he could recover for only one half of the property attached by the defendant, which was not purchased of F. & L. Winship and paid for by the above notes.

The jury found a verdict for the defendant.

If this instruction was wrong, in the opinion of the whole Court, and they should also be of opinion that the plaintiff could maintain this action without joining his late partner, then a new trial was to be granted ; otherwise judgment was to be rendered on the verdict ; unless the Court should be of opinion that the evidence as to ratification was insufficient to sustain the verdict.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff. The defendant clearly committed a tort in attaching the tools of trade ; also, in subsequently putting the property attached into the hands of the creditors and permitting them to use it, he was guilty of an abuse of legal process, which rendered him liable as a wrongdoer *ab initio.* The alleged ratification of his acts by the plaintiff was at most but an assent to the subsequent appropriation of the property, and whatever effect it might have upon the amount of damages, did not purge the wrong so as to constitute a bar to this action. But all the facts being found, the question of ratification is to be determined by the court, and taking the whole of the plaintiff's declarations together, they show distinctly that he did not mean to give up his action against the defendant. Bull. N. P. 46 *a ; Wyatt* v. *Blades,* 3 Campb. 396 ; *Peters* v. *Ballestier,* 3 Pick. 495 ; *Porter* v. *McClure,* 15 Wendell, 187 ; *Laurence* v. *Hopkins,* 13 Johns. R. 288 ; *Linsell* v. *Bonsor,* 2 Bingh. New Cas. 241.

*March 8th*

*Rand* and *Brigham,* for the defendant.

SHAW C. J. delivered the opinion of the Court. This is an action of trover against an officer for an attachment

*March 26th*

of the goods of a firm, of which the plaintiff was one member, and the *gravamen* is, that after the attachment, the defendant delivered the goods to F. & L. Winship, the attaching creditors, taking their receipt for them, that afterwards the action came to judgment, that the goods were not taken in execution, that the plaintiff afterwards demanded them, but that they were not returned.

The defence was, that after the attachment, it was agreed between the attaching creditors of the one part, and Handel Winship, one of the firm of Winship & Hewes, who were the defendants in that suit, on the other part, that the goods, some of which were perishable, and likely to waste by keeping, should be appraised, and the proceeds thereof applied to the payment of the debts of the firm, that this arrangement was afterwards ratified and confirmed by the plaintiff, and notice of it given to the defendant, the attaching officer, thereby dispensing with his calling on the receipters for the property, to be restored. It was left to the jury to find whether the plaintiff had so ratified this agreement, and it was found by their verdict that he had. The evidence was somewhat contradictory upon this question ; but it was fully submitted to the jury, and was sufficient to warrant their verdict. It was contended, however, that what was a ratification, was a question of law for the court; and as the evidence is detailed, and especially as the plaintiff persisted in continuing to prosecute his suit, it could not be legally inferred, that he had ratified the doings of his partner, which the suit sought to impeach. But we think it was rightly left to the jury, to find the facts, with proper directions as to the law. The judge instructed the jury, that if they were satisfied that the plaintiff had confirmed and approved such doings and proceedings, with a full knowledge of all the material facts, they should find a verdict for the defendant, otherwise for the plaintiff. It was equivalent to instructing them that such approval and confirmation, if given with a full knowledge of all the facts, was, in point of law, a ratification. The plaintiff's expression about beginning in the law and ending in the law, was evidence bearing on the fact whether on the whole the plaintiff approved or not, and of course, with the rest of the evidence, was for the consideration of the jury.

But it was contended that this direction was wrong in this respect, that the attachment and the subsequent misapplication of the attached property, was a naked wrong, and though the subsequent assent of the plaintiff might reduce the claim to nominal damages, it would not purge the wrong, and therefore that the action would still lie for nominal damages. As where goods wrongfully converted are afterwards returned, trover will still lie, though if the goods were returned speedily and in as good plight as when taken, the damages would be merely nominal. But we think that rule not applicable to this case, because the very question here is, whether there has been an unlawful conversion, either by an original illegal taking, or by a subsequent illegal application of the goods.

In the first place it is contended, that the attachment was wrongful, because it included tools of trade. The exception of tools of trade is a privilege given by law to the debtor, which he may waive, and if he assents to the attachment of them, such attachment is not wrongful. If such assent is given by one partner and afterwards assented to by the other, such assent must be considered as relating back, so as to make the attachment good *ab initio*. The other wrong complained of is in suffering the goods to be used after the attachment. But in this case the goods were delivered to the judgment creditors, upon their receipt, immediately after the attachment, and it was agreed by the partner Handel Winship, one of the defendants, and professing to act for both, that the goods should be taken, at an appraisement, for the payment of the debts of the firm. The most that can be said of this act is, that it was voidable by the plaintiff, the partner who did not assent to it, at his election, and if he afterwards assented to it, this made it good from the beginning. In general, when a stranger, in the absence of another, undertakes to represent him, and act in his behalf, and afterwards the principal shall adopt and ratify the act as his own, it shall bind him. *Ratihabitio retrotrahitur et mandato æquiparatur.* The act of a partner, claiming a right to act for both, when thus assented to by the other partner, cannot be less valid.

The Court are of opinion, that the subsequent assent to and ratification by the plaintiff, of the agreement of his part-

ner to the sale of the goods, at an appraisement, for the pay-ment of the debts of the firm, rendered that sale valid, that the assent to the attachment of tools rendered that attachment good as against the plaintiff, and that the officer, upon notice of such sale, was exempted from further liability to reclaim and restore the goods to the debtors, and therefore that this action cannot be maintained.

This renders it unnecessary to give any opinion on the question, whether one of two partners can maintain trover for partnership goods, when the defendant does not plead in abatement.

*Judgment on the verdict.*